| |
|---|
| **Glenmede Trust Co., N.A. v Infinity Q Capital Mgt. LLC** |
| 2024 NY Slip Op 30597(U) |
| February 26, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 160830/2022 |
| Judge: Melissa A. Crane |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. MELISSA A. CRANE**

*Justice*

-----------------------------------------------------------------------X

THE GLENMEDE TRUST COMPANY, N.A.,

Plaintiff,

- v -

INFINITY Q CAPITAL MANAGEMENT LLC, JAMES VELISSARIS, LEONARD POTTER, SCOTT LINDELL, BONDERMAN FAMILY LIMITED PARTNERSHIP, LP, INFINITY Q MANAGEMENT EQUITY LLC, TRUST FOR ADVISED PORTFOLIOS, U.S. BANCORP FUND SERVICES, LLC, EISNERAMPER LLP, QUASAR DISTRIBUTORS, LLC, JOHN C. CHRYSTAL, ALBERT J. DIULIO, CHRISTOPHER E. KASHMERICK, HARRY E. RESIS, RUSSELL B. SIMON, STEVEN J. JENSEN,

Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| PART | 60M |
| INDEX NO. | 160830/2022 |
| MOTION DATE | 11/16/2023 |
| MOTION SEQ. NO. | 012 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 012) 137, 138, 139, 140, 141, 151, 156, 161, 185

were read on this motion to/for          DISMISSAL          .

Defendant Infinity Q Capital Management LLC ("Infinity Q Mgmt")[1] has moved to dismiss Plaintiff The Glenmede Trust Company, N.A.'s ("Glenmede" or "Plaintiff") amended complaint pursuant to CPLR 3211(a)(7). The amended complaint alleges causes of action against Infinity Q Mgmt for violation of sections 11, 12(a)(2), and 15 of the Securities Act of 1933. During the oral argument on November 16, 2023, the court dismissed the cause of action for violation of section 11 against Infinity Q Mgmt (November 16, 2023 Transcript, pp. 112-13). For the following reasons, the court now dismisses the remaining claims for violation of sections 12(a)(2) and 15 of the Securities Act.

---

[1] The court defines Infinity Q Capital Management LLC as "Infinity Q Mgmt" to distinguish it from other Infinity Q entities, including Infinity Q Commodity Fund, Ltd.

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT LLC ET AL**
**Motion No. 012**

Page 1 of 15

1 of 15

## FACTUAL AND PROCEDURAL BACKGROUND

This matter arises in connection to the collapse of a mutual fund called Infinity Q Diversified Alpha Fund ("Mutual Fund"). Defendant Infinity Q Mgmt managed the Mutual Fund, selecting the Mutual Fund's portfolio of investments (Amended Complaint, NYSCEF Doc. No. 101, ¶¶ 28, 54). Individual defendants James Velissaris ("Velissaris"), Leonard Potter ("Potter"), and Scott Lindell ("Lindell") launched Infinity Q Mgmt in 2014 with non-party David Bonderman ("Bonderman"), allegedly to act as investment advisor for both the Mutual Fund and a separate private hedge fund ("Hedge Fund") (*id.*, ¶ 4). Rather than fill the Mutual Fund with traditional stocks and bonds, Infinity Q Mgmt purchased variance swaps as part of its strategy to "generate absolute returns that did not depend on what direction the market moved, but rather on how much the market moved (i.e., how volatile the market was)" (*id.*, ¶ 5).[2] These types of securities had no readily available market prices (*id.*, ¶ 7). Therefore, Infinity Q Mgmt had to generate its own net asset value ("NAV") of the assets in the Mutual Fund on a daily basis (*id.*, ¶¶ 6-7). Infinity Q Mgmt generated this NAV using the third-party valuation service Bloomberg offered, called BVAL (*id.*, ¶ 131). However, for many years, Velissaris managed to inflate artificially the value of the Mutual Fund by hundreds of millions of dollars (*id.*, ¶¶ 9-11). This resulted in an SEC investigation beginning in 2020 and the subsequent collapse of the Mutual Fund (*id.*, ¶¶ 11-13).

Plaintiff alleges causes of action under sections 11, 12(a)(2), and 15 against Infinity Q Mgmt. According to the amended complaint, the individual defendants launched Infinity Q Mgmt to manage both the Mutual Fund and the Hedge Fund (*id.*, ¶¶ 51-54). However, because Infinity Q Mgmt allegedly lacked the "preexisting infrastructure, regulatory expertise, and administrative

---

[2] According to the amended complaint, variance swaps allow buyers to "bet on the volatility of an underlying asset, security, index, or currency exchange" (*see* Amended Complaint, ¶ 116). For each variance swap, the parties determine a "strike price" (*id.*, ¶ 118). If volatility "exceeds the strike price, the buyer of the swap . . . receives the payment," but if volatility "is below the strike price, the seller of the swap . . . receives the payment" (*id.*).

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT
LLC ET AL
Motion No. 012**                                                                          **Page 2 of 15**

support required to run a mutual fund," Bonderman "outsourced the mutual fund regulatory and compliance functions to U.S. Bank" (*id.*, ¶¶ 61-62). U.S. Bank allegedly established multiple series trusts to host mutual fund products from multiple investment management firms, of which Defendant Trust for Advised Portfolios ("Trust") was one (*id.*, ¶¶ 64, 67). It was the Trust that established the Mutual Fund under its umbrella (*id.*, ¶ 69).

In 2014, Infinity Q Mgmt and the Trust entered into an Investment Advisory Agreement in which the Trust agreed to employ Infinity Q Mgmt as an "Adviser" (Investment Advisory Agreement, NYSCEF Doc. No. 141, § 1). Pursuant to this agreement, Infinity Q Mgmt "accept[ed] such employment, to render investment advice and related services" (*id.*). The agreement describes Infinity Q Mgmt's "General Duties," stating that Infinity Q Mgmt would "act as investment adviser to each Fund and [] supervise investments of each Fund in accordance with the investment objectives, policies and restrictions of each Fund as set forth in each Fund's and Trust's governing documents" (*id.*, § 2[a]). The agreement defines "Fund" as any of the "series of the Trust indicated on Schedule A," that lists only "Infinity Q Diversified Alpha Fund"—the Mutual Fund at issue here (*id.*, p. 1, Schedule A). Further, the agreement states that Infinity Q Mgmt would, "for all purposes herein, be deemed to be an independent contractor, and [would], unless otherwise expressly provided and authorized to do so, have no authority to act for or represent the Trust or any Fund in any way, or in any way be deemed an agent for the Trust or for any Fund" (*id.*, § 4). Christopher Kashmerick signed on behalf of the Trust, and Potter signed on behalf of Infinity Q Mgmt (*id.*, p. 9).

On December 20, 2019, the Trust issued shares in the Mutual Fund pursuant to a registration statement ("December 2019 Registration Statement") (Amended Complaint, ¶¶ 32, 142). The December 2019 Registration Statement reiterates Infinity Q Mgmt's role as that of an

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT     Page 3 of 15
LLC ET AL
Motion No. 012

3 of 15

[* 3]

"adviser," stating under "Management" that "Infinity Q Capital Management, LLC is the Fund's investment adviser" (December 2019 Registration Statement, NYSCEF Doc. No. 127, p. 14). The December 2019 Registration Statement provides further information on Infinity Q Mgmt's role, stating that it is a "SEC-registered investment advisory firm formed in 2014," that it "provides investment management services to institutions, individuals, high net worth individuals and other pooled investment vehicles," and that it is " responsible for the day-to-day management of the Fund in accordance with the Fund's investment objective and policies" (*id.*, p. 24). For Infinity Q Mgmt's work, "the Fund pays [Infinity Q Mgmt] a monthly management fee that is calculated at the annual rate of 1.70% of the Fund's average daily net assets" (*id.*). Additionally, the December 2019 Registration Statement specifies that Infinity Q Mgmt "acts as investment adviser to the Fund pursuant to an investment advisory agreement (the 'Advisory Agreement') with the Trust" (*id.*, p. 75). While Infinity Q Mgmt was responsible for "determin[ing] which securities [were] to be purchased and sold by the Fund," and for calculating the value of the Fund's investments (*id.*, pp. 80, 84), Quasar Distributors, LLC was to "act[] as the Fund's distributor, provid[ing] certain administration services and promot[ing] and arrang[ing] for the sale of Fund shares" (*id.*, p. 94).

Plaintiff asserts that the December 2019 Registration Statement contained false statements of material fact and that Infinity Q Mgmt is liable under section 11 for signing the December 2019 Registration Statement "through Potter" (Amended Complaint, ¶¶ 270, 272). The amended complaint additionally alleges that Infinity Q is liable under section 12(a)(2) because it "offered to sell, solicited the sale of and/or sold the Mutual Fund's shares to Plaintiff" through the December 2019 Registration Statement (*id.*, ¶ 285). Lastly, the amended complaint asserts that Infinity Q Mgmt is liable under section 15 because it "managed the investment strategy of the Mutual Fund and [the Trust], and was a control person of the Mutual Fund and [the Trust]" (*id.*, ¶ 295).

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT   Page 4 of 15
LLC ET AL
Motion No. 012

[* 4]                                                      4 of 15

After the Mutual Fund collapsed in March 2021, shareholders filed class action lawsuits related to the collapse of the Mutual Fund, and the parties reached a settlement that the court preliminarily approved on October 17, 2022 (*In re Infinity Q Diversified Alpha Fund Securities Litig.*, Index No. 651295/2021, NYSCEF Doc. No. 181). The court then held a final approval hearing on June 14, 2023. Plaintiff determined to opt out of the class action settlement and filed the complaint in this action on December 19, 2022 (Complaint, NYSCEF Doc. No. 2). Defendants, including Infinity Q Mgmt, then moved to dismiss. However, on May 3, 2023, after Plaintiff informed Defendants that it intended to amend its complaint as of right, Defendants, including Infinity Q Mgmt, stipulated to withdraw their pending motions to dismiss (Stipulation Withdrawing Motions to Dismiss, NYSCEF Doc. No. 98). Plaintiff then filed the amended complaint on May 26, 2023. Defendants, including Infinity Q Mgmt, moved to dismiss the amended complaint for failure to state a claim pursuant to CPLR 3211(a)(7). The court held oral argument on the motions to dismiss on November 15-16, 2023. During the oral argument, the court dismissed the cause of action against Infinity Q Mgmt for violation of section 11 of the Securities Act of 1933 (*see* November 16, 2023 Transcript, pp. 112-113). For the following reasons, the court now dismisses the sections 12(a)(2) and 15 claims as well.

## DISCUSSION

On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see also Chapman, Spira & Carson, LLC v Helix BioPharma Corp.*, 115 AD3d 526, 527 [1st Dept 2014]).

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT
LLC ET AL
Motion No. 012

Page 5 of 15

The court notes that, despite attaching to its motion papers the affirmation of Bradley J. Hershon (NYSCEF Doc. No. 139) and exhibits referenced therein (NYSCEF Doc. Nos. 140-141), Infinity Q Mgmt has not moved to dismiss the amended complaint pursuant to CPLR 3211(a)(1) on the basis of a "defense [] founded upon documentary evidence" (CPLR 3211(a)(1); Opening Memo., NYSCEF Doc. No. 138, p. 1). Rather, the motion is limited to failure to state a cause of action under CPLR 3211(a)(7). Nevertheless, dismissal may be appropriate based on documentary evidence where the documentary evidence "flatly reject[s]" the plaintiff's cause of action (*see Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 134-135 [1st Dept 2014]). When a defendant submits documentary evidence, the standard shifts from "whether the plaintiff stated a cause of action to whether it has one" (*id.* at 135 [internal citations and quotation marks omitted]; *Kaplan v Conway & Conway*, 173 AD3d 452, 453 [1st Dept 2019] [finding that the motion court "properly considered the emails submitted by defendants in dismissing the complaint"]). Therefore, the court will consider the documentary evidence that Infinity Q Mgmt has submitted.

1. Section 12(a)(2)

Section 12(a)(2) provides for liability against any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading" (15 USCA § 77l; *In re Morgan Stanley Information Fund Securities Litigation*, 592 F3d 347, 359 [2d Cir 2010] [stating, for section 12(a)(2) liability, a plaintiff must allege that "(1) the defendant is a 'statutory seller'; (2) the sale was effectuated by means of a prospectus or oral communication; and (3) the prospectus or oral communication include[d] an untrue statement of a material fact or omit[ted] to state a

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT   Page 6 of 15
LLC ET AL
Motion No. 012

[* 6]

6 of 15

material fact necessary in order to make the statements . . . not misleading"] [internal citation and quotation marks omitted]). A party is a statutory seller if they "(1) passed title, or other interest in the security, to the buyer for value, or (2) successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [their] own financial interests or those of the securities['] owner" (*id.* [internal citations and quotation marks omitted]; *Lozada v TaskUs, Inc.*, 2024 WL 68571, *18 [SDNY Jan 5, 2024] ["[A]ssuming one is not an owner who passed title or other interest in the security to the buyer, the term 'seller' must include the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the security owner."] [internal citations and quotation marks omitted]).

The court will not hold a party liable under section 12(a)(2) for "substantial participation" in a sales transaction or for "mere assist[ance] in another's solicitation efforts" (*Youngers v Virtus Investment Partners Inc.*, 195 F Supp 3d 499, 522 [SDNY 2016]). Further, while the circulation of SEC filings or promotional materials may be a factor in alleging section 12(a)(2) liability, the "weight of authority" in New York holds that, on its own, the "mere preparation and filing of a registration statement does not suffice to establish a defendant as a statutory seller under Section 12(a)(2)" (*Lozada*, 2024 WL 68571, *18, citing *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F Supp 3d 224, 260-261 (SDNY 2020)]; *Chester County Employees Retirement Fund v Alnylam Pharmaceuticals, Inc.*, 193 AD3d 638, 639 [1st Dept 2021] [dismissing section 12(a)(2) claim against defendants because the complaint "alleges only that they reviewed and signed the registration statements, which is insufficient to establish that they are statutory sellers"]).

Additionally, in order for a plaintiff to plead section 12(a)(2) liability, it must allege that it purchased "as a result of such solicitation" (*see Underwood v Coinbase Global, Inc.*, 654 F Supp 3d 224, 239 [SDNY 2023] [dismissing section 12(a) cause of action, finding that defendant's

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT          Page 7 of 15
LLC ET AL
Motion No. 012

[* 7]                                                              7 of 15

alleged activities were "of a piece with the marketing efforts, materials, and services that courts . . . have held insufficient to establish active solicitation by a defendant" but that, even if the amended complaint had pled direct solicitation, "it does not plead that plaintiffs purchased and sold the Tokens as a result of such solicitation, as also required"]; *Holsworth v BProtocol Foundation*, 2021 WL 706549, at *3 [SDNY Feb 22, 2021] [dismissing section 12 claim where plaintiff failed to show "that he purchased securities as a result of any active solicitations by Defendants"]).

The court grants Infinity Q Mgmt's motion to dismiss Plaintiff's section 12(a)(2) claim because Defendant has established that it was not a statutory seller. Plaintiff argues that Infinity Q Mgmt was a statutory seller because Infinity Q Mgmt "marketed" the Mutual Fund for "retail investors" (Opposition, NYSCEF Doc. No. 161, p. 17). In particular, Plaintiff refers to allegations in the amended complaint that "in its marketing materials, Infinity Q [Mgmt] represented that it offered retail investors 'access to the top tier investment strategies typically reserved for elite high net worth clients,'" and that "[i]n its own marketing materials, Infinity Q [Mgmt] promoted itself as Bonderman's personal investment adviser" (Amended Complaint, ¶¶ 55, 57). Additionally, Plaintiff highlights the amended complaint's reference to a Bloomberg article about the Mutual Fund, published following Infinity Q Mgmt's launch, that stated "Infinity Q Capital Management is offering retail and other investors a version of the hedge fund programs it uses for the billionaire" (*id.*, ¶ 56).

These limited allegations of marketing are insufficient to survive this motion. The District Court's decision in *Youngers v Virtus Investment Partners Inc.* (195 F Supp 3d 499 [SDNY 2016]) is instructive. There, the court dismissed section 12(a)(2) claims against defendants where the complaint alleged that the defendants "'marketed the AlphaSector Funds <u>to brokers</u>,'—not

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT
LLC ET AL
Motion No. 012

Page 8 of 15

investors—and made marketing materials available on 'their website and other channels'" (*id.* at 522 [citation and internal quotation marks omitted]). Plaintiff has argued that Infinity Q Mgmt's conduct is distinguishable from the conduct in *Youngers* because Infinity Q Mgmt allegedly marketed its product to the "retail public," rather than to brokers (*see* November 16, 2023 Transcript, pp. 108-109). However, even if *Youngers* does create this distinction, Plaintiff has failed to allege more than conclusory allegations that Infinity Q Mgmt actually did market to retail investors. In Paragraph 55, rather than alleging any instances of Infinity Q Mgmt soliciting retail investors to purchase shares, Plaintiff alleges that the Mutual Fund "**was marketed** as a vehicle for the masses" and that in the marketing materials, Infinity Q Mgmt "**represented that** it offered retail investors" access to particular strategies (Amended Complaint, ¶ 55 [emphasis added]). Neither of these claims reflect actual alleged communications between Infinity Q Mgmt and retail investors whereby Infinity Q Mgmt marketed the Mutual Fund to those retail investors. The allegation concerning a Bloomberg article's reference to Infinity Q Mgmt "offering retail [] investors" a version of the Hedge Fund (*id.*, ¶ 56) is also insufficient, as this allegation appears to represent what a third-party publication claimed about Infinity Q Mgmt's services rather than what Infinity Q Mgmt claimed about its own services. Further, the amended complaint's allegation that Infinity Q Mgmt "promoted itself as Bonderman's personal investment adviser" within marketing materials (*id.*, ¶ 57) again says nothing about what Infinity Q Mgmt did or did not convey specifically to private retail investors.

As in *Youngers*, the conclusory allegations within the amended complaint fail to allege that Infinity Q Mgmt "actively or directly marketed" the Mutual Fund (*Youngers*, 195 F Supp 3d at 522). The insufficiency of these allegations is clear when compared with allegations from cases that the *Youngers* court cited as examples of when a party **has** pled statutory seller status (*see id.*).

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT        Page 9 of 15
LLC ET AL
Motion No. 012

[* 9]                                                    9 of 15

For example, in the case *In re Vivendi Universal, S.A.* (381 F Supp 2d 158 [SDNY 2003]), the court found that the plaintiffs properly pled that an individual defendant was a statutory seller because he allegedly "actively participated in the preparation of the allegedly misleading or false registration statement, and regularly appeared before investors and financial news agencies to tout the financial vitality of Vivendi and thereby encourage investors to purchase Vivendi's securities" (*id.* at 187). Here, there are no allegations that Infinity Q Mgmt "appeared" before investors in order to encourage purchases. Similarly, there are no allegations that Infinity Q Mgmt individuals participated in "road show" meetings, like the defendants in the case *In re WorldCom, Inc. Securities Litigation* (294 F Supp 2d 392, 423 [SDNY 2003]).

Additionally, even if the amended complaint sufficiently alleged that Infinity Q Mgmt marketed the Mutual Fund to retail investors, the amended complaint fails to allege that investors purchased shares in the Mutual Fund specifically in response to Infinity Q Mgmt's alleged solicitations. While Plaintiff refers to marketing materials and a Bloomberg article describing Infinity Q Mgmt's role as an offeror of shares of the Mutual Fund, these allegations do not refer to investors relying on Infinity Q Mgmt representations in determining to purchase shares. The District Court's decision in *Underwood v Coinbase Global, Inc.* (654 F Supp 3d 224 [SDNY 2023]) is applicable. There, the amended complaint alleged that the defendant, a cryptocurrency exchange, had "promote[d] the sale of Tokens . . . participated in direct promotions, including 'airdrops' of free Tokens . . . wr[ote] news updates on price movements of the Tokens, [] and link[ed] to stories about the Tokens published across the internet" (*id.* at 239 [internal quotation marks and citations omitted]). While the court found that these alleged activities amounted to "marketing efforts" that were "insufficient to establish active solicitation," the court went on to find that even if the amended complaint had pled direct solicitation, "it [did] not plead that

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT          Page 10 of 15
LLC ET AL
Motion No. 012

[* 10]                                                        10 of 15

plaintiffs purchased and sold the Tokens as a result of such solicitation, as also required" (*id.*, citing *Steed Fin. LDC v Nomura Sec. Intl., Inc.*, No. 00 Civ. 8058 (NRB), 2001 WL 1111508, at *7 [SDNY Sept 20, 2001]; *see also Holsworth v BProtocol Foundation*, 2021 WL 706549, at *3 [SDNY Feb 22, 2021] [dismissing section 12 claim, finding that the plaintiff failed to show "that he was directly contacted by Defendants or that he purchased securities as a result of any active solicitations by Defendants"]).

2. Section 15

The court also dismisses the cause of action for liability under section 15 of the Securities Act. Section 15 provides that "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under sections [11] or [12] of [the Securities Act], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable" (15 USCA § 77o; *Matter of NIO Inc. Securities Litigation*, 211 AD3d 464, 466 [1st Dept 2022]; *Erie County Employees' Retirement System v NN, Inc.*, 205 AD3d 644, 646 [1st Dept 2022]). To state a claim for a section 15 violation, a plaintiff must allege "(a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator" (*In re Global Crossing. Ltd. Securities Litig.*, 2005 WL 1907005, *11 [SDNY Aug 8, 2005]; *Erie County Employees' Retirement System*, 205 AD3d at 646).

The court notes that, as discussed during oral argument (*see* November 15, 2023 Transcript, pp. 7, 67-68), there is an ostensible inconsistency between the law in the First Department and the law in the Second Circuit as to whether or not a plaintiff must allege "actual control" for a section 15 claim. In particular, in *Acacia Nat. Life Ins. Co v Kay Jewelers, Inc.* (203 AD2d 40 [1st Dept 1994]), the First Department held that a plaintiff claiming section 15 liability "need not allege facts that would prove that the control person actually exercised the power to influence or control" but

160830/2022  THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT        Page 11 of 15
LLC ET AL
Motion No. 012

[* 11]                                                          11 of 15

needs only to allege the "power or potential [power] to influence and control" (*id.* at 46 [internal citations and quotation marks omitted]). On the contrary, in *City of Omaha Police and Fire Retirement System v Evoqua Water Technologies Corp.* (450 F Supp 3d 379 [SDNY 2020]), the court noted that the "power to influence managerial decisions is not the same as 'power to direct the management and policies of the primary violator'" and that "[a]ctual control is essential" (*id.* at 427-428 [internal citations and quotation marks omitted]). While these holdings may seem somewhat inconsistent at first glance, the differences are, ultimately, insignificant. Under both *Acacia* and applicable federal cases, the "power" to control is sufficient for a section 15 claim (*see Acacia*, 203 AD2d at 46; *City of Omaha*, 450 F Supp 3d at 427 ["Control is defined as 'the **power** to direct or cause the direction of the management and policies of [the primary violators].'" [emphasis added] [citations omitted]; *see also Emerson v Mutual Fund Series Trust*, 393 F Supp 3d 220, 260 [EDNY 2019] [same]). While the federal cases refer to a need to allege "actual control," they do not suggest a need to allege the **exercise** of that actual control. As such, both state and federal courts are essentially in agreement that a plaintiff claiming section 15 liability must allege the power to direct the primary violator.

Here, Defendant correctly asserts that any control person liability for Infinity Q Mgmt would be based on an underlying section 11 or 12(a)(2) violation by the Trust. While the amended complaint alleges that Infinity Q Mgmt "managed the investment strategy of the Mutual Fund and [the Trust], and was a control person of the Mutual Fund and [the Trust]" (Amended Complaint, ¶ 295), Plaintiff has failed to state a cause of action against Infinity Q Mgmt for control person liability over the Mutual Fund because the amended complaint does not plead either of the underlying section 11 or 12(a)(2) claims against the Mutual Fund (*see Matter of NIO Inc. Securities Litigation*, 211 AD3d 464, 466 [1st Dept 2022] [holding that lower court properly dismissed

160830/2022 THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT Page 12 of 15
LLC ET AL
Motion No. 012

[* 12] 12 of 15

control person liability claims under section 15 because plaintiffs failed to allege a primary violation under sections 11 or 12(a)(2)]).

Further, the amended complaint fails to allege control person liability based on control of the Trust. First, the court rejects the argument that Infinity Q Mgmt exercised control over the Trust based on its control over Potter, a signatory of the December 2019 Registration Statement. While Potter undisputedly signed the December 2019 Registration Statement, he signed it on behalf of **nonparty** Infinity Q Commodity Fund, Ltd.—**not** on behalf of Defendant Infinity Q Mgmt (December 2019 Registration Statement, p. 119). Therefore, the text of the document itself directly refutes the allegation that "Infinity Q [Mgmt] (through Potter) signed the December 2019 Securities Act Filing" (Amended Complaint, ¶ 272).

Infinity Q Mgmt correctly distinguishes the case law that Plaintiff cites in support of this theory of control person liability. In the cases that Plaintiff cites, the court denied dismissal of control person claims based in part on the defendants' appointment of directors to the board of the issuer (*see In re American Apparel, Inc. Shareholder Litigation*, 2013 WL 10914316, *37 [CD Cal Aug 8, 2013]; *In re Global Crossing, Ltd. Securities Litigation*, 2005 WL 2990646, *8 [SDNY Nov 7, 2005]; *In re Global Crossing, Ltd. Securities Litig.*, 471 F Supp 2d 338, 352 [SDNY 2006]). Here, Plaintiff does not allege that Infinity Q Mgmt appointed any of the individuals who signed the December 2019 Registration Statement on behalf of the Trust. Rather, signatories Christopher Kashmerick and Russell Simon were US Bancorp employees (Amended Complaint, ¶¶ 36-37). Other signatories, John Chrystal, Albert DiUlio, and Harry Resis, were all trustees of the Mutual Fund (*id.*, ¶¶ 38-40). Potter, Velissaris, and Neil Gray all signed on behalf of Infinity Q Commodity Fund, Ltd. (December 2019 Registration Statement, p. 119). Because Plaintiff has failed to allege that Infinity Q Mgmt appointed any of these individuals to their positions in which they signed the

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT          Page 13 of 15
LLC ET AL
Motion No. 012

[* 13]                                                          13 of 15

December 2019 Registration Statement, and because the document itself shows that they did not sign on behalf of Infinity Q Mgmt, their signatures on the December 2019 Registration Statement cannot, on their own, sufficiently allege control person liability against Infinity Q Mgmt for the Trust's alleged underlying Securities Act violations.

Nor does Plaintiff allege control person liability against Infinity Q Mgmt through asserting that the Trust was merely a "U.S. Bancorp pawn," and that US Bancorp, in turn, "failed to exercise any diligence" and "deferred to Infinity Q's valuations" (Opposition, p. 12). If anything, these allegations suggest that **US Bancorp** was a control person of the Trust, **not** that Infinity Q Mgmt was a control person of the Trust.[3] Additionally, the amended complaint fails to allege that Infinity Q Mgmt controlled the Trust specifically with respect to the December 2019 Registration Statement. Because purported misrepresentations within the December 2019 Registration Statement form the basis for the Trust's alleged liability under sections 11 and 12(a)(2) (*see e.g.*, Amended Complaint, ¶¶ 270-271, 283-285), any section 15 liability against Infinity Q Mgmt based on the Trust's actions would have to be based on the December 2019 Registration Statement as well. Thus, Plaintiff's allegations that US Bancorp generally deferred to Infinity Q Mgmt's valuations without properly verifying their accuracy, (*see e.g.* Amended Complaint, ¶¶ 192-193), fail to allege "[a]ctual control over . . . the transaction in question"—the execution of the December 2019 Registration Statement that allegedly contained misrepresentations by the Trust (*see Youngers v Virtus Investment Partners Inc.*, 195 F Supp 3d 499, 524 [SDNY 2016], *citing In re Alstom SA*, 406 F Supp 2d 433, 487 [SDNY 2005] [internal quotation marks omitted] [dismissing control person claims against particular defendants where the complaint failed to allege that those

---

[3] The court already denied dismissal of the section 15 claim against US Bancorp to the extent Plaintiff alleged that US Bancorp was a control person of the Trust (*see* December 21, 2023 Decision and Order, NYSCEF Doc. No. 199, pp. 13-16).

**160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT**        **Page 14 of 15**
LLC ET AL
Motion No. 012

[* 14]                                                                    14 of 15

parties had "control over the statements made in [the] registration statements"]). Therefore, the court dismisses Plaintiff's section 15 cause of action against Infinity Q Mgmt.

The court has considered the parties' remaining contentions and finds them unavailing. Accordingly, it is,

**ORDERED** that Infinity Q Mgmt's motion to dismiss the amended complaint's causes of action against it under sections 11, 12(a)(2), and 15 of the Securities Act of 1933 is granted in its entirety.

| 02/26/2024 | | |
|---|---|---|
| **DATE** | | **MELISSA A. CRANE, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☒ GRANTED ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

160830/2022   THE GLENMEDE TRUST COMPANY, N.A. vs. INFINITY Q CAPITAL MANAGEMENT     Page 15 of 15
LLC ET AL
Motion No. 012

15 of 15